UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CLIFTON WATSON,

    Plaintiff,

v.

No. 17-11833

District Judge Arthur J. Tarnow
Magistrate Judge R. Steven Whalen

CITY OF BURTON, ET AL.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

Before the Court is the Defendants' Motion for Summary Judgment [Doc. #54], filed by Defendants City of Burton, Burton Police Department, Detective Eric Freeman, Detective David Powell, Officer Dennis, and Detective/Sgt. Shawn Duncanson, and Plaintiff's motion for Summary Judgment [Doc. #36], which have been referred for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's motion [Doc. #54] be GRANTED, and that Plaintiff's motion [Doc. #36] be DENIED.

**I.**   **FACTUAL AND PROCEDURAL BACKGROUND**

On or about May 15, 2017, Plaintiff Michael Clifton Watson filed a *pro se* civil complaint in Genesee County Circuit Court, naming as Defendants the City of Burton, the Burton Police Department, Detective Freeman, Detective David Powell, Officer Dennis Gross, and Detective Sgt. Shawn Duncanson. The complaint alleges a violation of

-1-

Plaintiff's Fourth Amendment rights based on his arrest and a violation of the Equal Protection Clause, pursuant to 42 U.S.C. § 1983, and state law claims of false arrest and false imprisonment. On June 9, 2017, Defendants removed the case to this Court. On August 24, 2017, Plaintiff Michael Clifton Watson filed a revised amended complaint [Doc. #24] in this Court.

Plaintiff alleges that on August 12, 2015, Defendants Detective Eric Freeman, Detective David Powell, Officer Dennis Gross, and Detective Sgt. Shawn Duncanson arrested him at his home when there was no warrant for his arrest. *Amended Complaint* [Doc. #24], ¶¶ 7-8. The complaint lacks detail as to the specific facts on which it is based; however, discovery materials have illustrated the underlying events. Attached to Defendants' motion are the deposition transcripts of the Plaintiff, the text messages between Plaintiff and Ms. Vesta Meissner, and an excerpt of a personal protection hearing with testimony from Defendant Detective Freeman. Plaintiff has also submitted his own affidavit as an exhibit to his response.

This action arises out of an investigation of a victim's complaint in which she felt threatened by the Plaintiff, leading to the Plaintiff's arrest. *Defendants' Motion for Summary Judgment* [Doc. #54], Exhibit 1 – Pl's Dep., p.47. Defendant Detective Freeman testified that he received a threat complaint from Ms. Megan Hubarth, who alleged that the Plaintiff had made some threatening text messages regarding her. *Id.* at Exhibit 3 – Transcript of Personal Protection Hearing, p. 5. The Plaintiff has also submitted a police report written on August 4, 2015, by Officer Marshall Sabourin, approved by Defendant Detective Sgt. Shawn Duncanson, in which Ms. Hubarth alleged

-2-

that Plaintiff "recently indicated in a text message that he acquired a gun and intends to kill her." *Plaintiff's Response*. [Doc. #58], Exhibit 5 – Police Report. After having received the text messages in question by email, Detective Freeman contacted the City Attorney to see if there was probable cause to arrest Plaintiff. *Defendants' Motion for Summary Judgment* [Doc. #54], Exhibit 3 at p. 5-6.

The Plaintiff testified that on August 12, 2015, he heard knocks on his door from three police officers, who asked him to step outside and asked if he had been sending threatening text messages to Ms. Megan Hubarth. *Id*. at Exhibit 1 – Pl's Dep., p.60-64. Plaintiff admitted that he wrote the text messages but testified he sent the messages to Ms. Vesta Meissner rather than to Ms. Hubarth. *Id*. at 64-65.

Plaintiff told the detectives where his phone was inside his home and wanted to show the detectives that he had not sent the text messages to Ms. Hubarth. *Id*. at 69-70. The text messages at issue, written by Plaintiff and sent to Ms. Meissner, are as follows:

> PLAINTIFF: She needs to know she is not in any danger at all
>
> MEISSNER: I told he [sic] it was her friends she already knows
>
> PLAINTIFF: Not just them
>
> PLAINTIFF: The rest I will not text but it should be obvious to where this is headed
>
> PLAINTIFF: And I'm sure they mean a lot to her
>
> PLAINTIFF: Or vice versa
>
> PLAINTIFF: After I am finished and after you hand me over to the proper authorities, you will take ownership of my possessions, and accounts, I will not be needing them.

PLAINTIFF: However one phone call can stop all of this

PLAINTIFF: Who said anything about jail

MEISSNER: Then what are you talked about put away?

PLAINTIFF: Vesta everything I've said to you has had a double meaning, the obvious one does not show the intent

PLAINTIFF: Read over everything

PLAINTIFF: Pass it along and I have everything I need to get it done

PLAINTIFF: And I don't care about myself so I have nothing to lose, I'm at peace with my decision, when I start it will be [too] late to stop. I. Will [sic] be at peace when this ends, any more outside people brought into this pain will make resolving the matter more hectic than it has to be.

PLAINTIFF: I just want peace

PLAINTIFF: And Damon I'm drunk

PLAINTIFF: So drunk I need to stop texting

PLAINTIFF: Goodnight

MEISSNER: Good night forever or today?

PLAINTIFF: Today, I'll let you know before the curtain is closed, but it will never be done before the final act. How does it make you feel that with the conditions told to her that she doesn't care, does it make you question your relationship with her?

PLAINTIFF: I won't stop until I talk with her one on one

PLAINTIFF: Until then the answer lies within the chorus of drowning pool's song bodies

PLAINTIFF: Remember I don't do things half ass, go big or go home and I have nothing left to lose so I'm going home

-4-

> PLAINTIFF: But hell [I'm] drunk take me seriously or light is up to everyone else

  *Id.* at Exhibit 2 – Texts from Plaintiff.

The chorus of Drowning Pool's song "Bodies" reads as follows:

> *Let the bodies hit the floor.*
>
> *Let the bodies hit the floor.*
>
> *Let the bodies hit the floor.*
>
> *Let the bodies hit the floor.*
>
> *Let the bodies hit the floor.*
>
> *Let the bodies hit the floor.*[1]

Plaintiff was charged with Threats by Computer, Ordinance Number 134.05A. *Plaintiff's Response* [Doc. #58], Exhibit 3 at 1. Plaintiff testified that he was taken to Burton Police Department by Detective Freeman and another officer, and before he was placed in a holding cell, the other officer in the car with Det. Freeman stated, "That was the easiest arrest that I've made in a while." *Defendants' Motion for Summary Judgment* [Doc. #54], Exhibit 1 at 74-75. The Plaintiff testified that he was then brought over to Flint city lockup and released the next day in the afternoon, on August 13, 2015. *Id.* at 76-79. The Plaintiff also alleges that he was arraigned on or around September 14, 2015, and his pretrial conference was set for a date in October. *Id.* at 87, 91. The Plaintiff testified as follows regarding the pretrial conference:

---

[1] Drowning Pool. "Bodies." *Sinner*. The Bicycle Music Company, 2001, Track 2. Lyrics retrieved from https://www.azlyrics.com/lyrics/drowningpool/bodies.html, last accessed 06/21/18.

Q: And what happened at the pretrial conference?

A: I spoke with a city attorney, and which I showed him that I was also equally possession with the evidence. And he inquired on where I got it from followed on by a request from me to asking him to drop the charges because it's very clear that I didn't do this. And which he made the statement that "Even without the text message I would still charge you."

And I asked why, and he's like—he mentioned the police report.

And I said, "But with no evidence? What do you mean?"

And I—Then he was remotely quiet, and I inquired—And I made the statement to him, "There is only two logical reasons in which someone would persist with no evidence with just the blatant allegations that are unfounded, and that would be if you hold a personal bias towards myself or if you're racist."

Q: What did he say to that?

A: He walked away.

*Id*. 91-92.

Plaintiff alleges violations of his rights under the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment, and state law claims of false arrest and false imprisonment, seeking damages as a result of suffering wrongful arrest, wrongful seizure, wrongful incarceration, hindrance in employment, and emotional and physical injury related to the events.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III.     ANALYSIS[2]

### Defendant's Motion [Doc. #54]

#### A. Constitutional Violations

##### 1. Violation of Plaintiff's Fourth Amendment Rights

Defendants dispute Plaintiff's allegations that the warrantless arrest violated his Fourth Amendment rights, contending that Defendant police officers had probable cause for the warrantless arrest. It is undisputed that Defendants did not secure a warrant before arresting Plaintiff. Nevertheless, "arrest without a warrant does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). The existence of probable cause is viewed under an objective standard that asks whether a prudent person in an arresting officer's position would have been justified in believing that Plaintiff had committed a crime. *Id.*; *see also Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Applying these standards to the circumstances presented, the Court concludes as a matter of law that Defendants had probable cause to arrest Plaintiff. Plaintiff has argued that the officers lacked authority to arrest him under the City's ordinance because the local ordinance sets forth a 90-day misdemeanor, which prohibits a warrantless search under Mich. Comp. Laws § 764.15(1)(d). However, Defendants have identified Michigan

---

[2] Because the disposition of the state law counts depends upon the constitutional analysis, the Court examines the counts out of sequence found in the Amended Complaint.

statutes, Mich. Comp. Laws §§ 750.540e(a) and 750.81, that dictate Plaintiff's conduct as misdemeanors punishable up to 93 days, in which case no officer presence is required for a warrantless arrest. [Doc. #54], *Defendants' Brief* at 10.

Mich. Comp. Laws § 750.540(e) prohibits use of "a telecommunications service provider with intent to terrorize, frighten, intimidate, threaten, harass, molest, or annoy another person, or to disturb the peace and quiet of another person by […] threatening physical harm or damage to any person or property in the course of a conversation or message through the use of a telecommunications service or device." The relevant facts and circumstances presented at the time of Plaintiff's arrest indicate: (i) that Plaintiff admitted that he sent the text messages at issue to Ms. Meissner; and (ii) on their face, the text messages appear to threaten physical harm to Megan Hubarth and other friends of Plaintiff's ex-girlfriend, Chloe Plamondon. Plaintiff sent the text messages to Ms. Meissner, instructing her to "pass it along" stating "I have everything I need to get it done." He referenced the chorus of Drowning Pool's "Bodies," which repeats the phrase, "Let the bodies hit the floor" six times. There is no ambiguity as to what that means. An officer, who was presented with these text messages, confirmed by Plaintiff himself that he wrote them, would be justified in believing that there was probable cause to arrest the Plaintiff for a violation of Mich. Comp. Laws § 750.540(e).

With respect to Mich. Comp. Laws § 750.81, "a person who assaults or assaults and batters an individual […] is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both." Under Michigan law, an assault is "any intentional unlawful offer of corporal injury to another person by force,

or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Williams v. Payne*, 73 F. Supp. 2d 785, 791 (E.D. Mich. 1991) (quoting *Espinoza v. Thomas*, 189 Mich.App. 110, 119, 472 N.W.2d 16 (1991)). In the present case, Plaintiff stated that "I have everything I need to get it done" and to "pass [the message] along". *Defendants' Motion for Summary Judgment* [Doc. #54], Exhibit 2; *see also Plaintiff's Response* [Doc. #58], Exhibit 10. Furthermore, Ms. Hubarth alleged in the police report the following: she had been told Plaintiff had obtained a gun and intended to kill her; that she was afraid of Plaintiff and believed his threat was credible; and she was told by a mutual friend that Plaintiff intended to carry out his threat. *Id*. at Exhibit 5 – Police Report. Given these facts, an officer reasonably could have believed that Plaintiff would carry out his threat and that there was therefore probable cause to believe Plaintiff had committed an assault in violation of Mich. Comp. Laws §750.81.

The objective facts known to the officers support a finding of probable cause to arrest Plaintiff under both the Burton City Ordinance § 134.05 and Mich. Comp. Laws §§ 750.540e(a) and 750.81. Therefore, Plaintiff's claim of a violation of the Fourth Amendment based on his arrest must be rejected.

**2. Equal Protection Clause**

Plaintiff, an African-American, alleges that his warrantless arrest was the result of racial discrimination. *Amended Complaint* at ¶¶ 7-9. Plaintiff's claim sounds in the Equal Protection Clause of the Fourteenth Amendment. *Whren, supra*, 517 U.S. 806, 813, 116

S.Ct. 1769 at 1774 ("[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause…")

The Equal Protection Clause states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S.C. Const. Amend. XIV § 1. "The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005); *Vacco v. Quill*, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997); 42 U.S.C. § 1981. The Equal Protection clause "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Id.*; *Vacco*, 521 U.S. at 799, 117 S.Ct. at 2297. In order for the court to apply strict scrutiny, the plaintiff must "allege that he was denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification" or was "intentionally discriminated against because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).

In establishing a case of selective enforcement, the claimant "must demonstrate through 'direct, circumstantial, or statistical evidence,' that he was subjected 'to unequal treatment based upon [his] race or ethnicity.'" *Shahit v. City of Detroit Police Officer Tosqui*, 2005 WL 1345413, *16 (E.D. Mich. 2005)(Zatkoff, J.) (citing *United States v. Saucedo*, 226 F.3d 782, 790 (6th Cir. 2000) and *Farm Labor Organizing Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 533 (6th Cir. 2002)). "[I]n making "a case of

-11-

selective enforcement, the plaintiff 'must establish that the challenged police action 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Zerod v. City of Bay City*, 2006 WL 618874, *2 (E.D. Mich. 2006) (Lawson, J.) (citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005) (internal citations omitted). "To establish discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *Farm Labor Organizing Committee,* 308 F.3d at 534 (citing *United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480, 1487, 134 L.Ed.2d 687 (1996)). "Discriminatory purpose can be shown by demonstrating that the 'decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Farm Labor Organizing Committee*, 308 F.3d at 534 (citing *Wayte v. United States*, 470 U.S. 598, 610, 105 S.Ct. 1524, 1532, 84 L.Ed.2d 547 (1985)). "The claimant's burden to demonstrate discriminatory purpose and effect 'is a demanding one' given the 'strong presumption that the state actors have properly discharged their official duties.'" *Shahit,* 2005 WL 1345413 at *16 (citing *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000).

Plaintiff has presented no evidence to support his subjective belief that the Defendants' actions were racially motivated. Plaintiff has failed to identify any non-minority individual in similar circumstances who was treated differently by any of the Defendant officers. Plaintiff testified:

> Q.   Did Detective Freeman ever say or do anything to you that you perceived to be racially motivated or biased?

-12-

A. That I perceived to be?

Q. Yeah.

A. Yes.

Q. What?

A. Five officers, having five officers respond to a local ordinance violation that's equivalent of a crank phone call for the charge in which I was charged with.

Q. So you thought that because he showed up with so many officers that was indicative of him being a racist?

A. With the information that was provided at that point in time in regarding to the nature of the arrest there is no other logical determination on why you would behave in such a way.

Q. So it's your belief if Detective Freeman had received the exact same complaint with regard to alleged death threats, threat of a gun, that you planned on obtaining a gun and carrying out a threat, that if you had been white Detective Freeman would not have shown up with any other officers. Is that your belief?

A. It is my belief.

*Defendants' Motion for Summary Judgment* [Doc. #54], Ex. 1, p. 92-93.

Plaintiff's Equal Protection claim is based on nothing more than his subjective perceptions. Because he has failed to present evidence to support his subjective belief that the officers' arrest was racially motivated, the Equal Protection claim must be dismissed.

### B. State Law Claims – False Arrest and False Imprisonment

Plaintiff alleges the state law claims of false arrest and false imprisonment. *Amended Complaint* at ¶¶ 4-7. To make out a claim of false arrest or false imprisonment, "the plaintiff must show that the arrest was not legal, i.e., that it was made without

probable cause." *Tope v. Howe*, 179 Mich.App. 91, 105, 445 N.W.2d 452 (1989). Under Michigan law, "False arrest or imprisonment is arrest or imprisonment (1) of a person (2) who is innocent of the charge on which he is arrested (3) by the defendant or at his instigation [and] (4) without legal justification." *Lewis v. Farmer Jack Div. Inc.*, 415 Mich. 212, 232, 327 N.W.2d 893, 901 (1982). "If the arrest was legal, there has not been a false arrest or a false imprisonment." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18 (2003). As addressed earlier, because the officers had probable cause to arrest Plaintiff, the arrest was valid. Plaintiff's false arrest and false imprisonment claims must therefore be dismissed.

### Plaintiff's Motion [Doc. #36]

As a logical corollary to Defendant's motion being granted, Plaintiff's motion for summary judgment must be denied.

### IV. CONCLUSION

For these reasons, I recommend that the Defendants' motion for summary judgment [Doc. #54] be GRANTED, and that the complaint be DISMISSED WITH PREJUDICE. I further recommend that Plaintiff's motion for summary judgment [doc. #36 be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 7.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 16, 2018               s/R. Steven Whalen
                                   R. STEVEN WHALEN
                                   UNITED STATES MAGISTRATE
                                   JUDGE

---

### CERTIFICATE OF SERVICE

I hereby certify on July 16, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 16, 2018.

                                   s/Carolyn M. Ciesla
                                   Case Manager for the
                                   Honorable R. Steven Whalen