UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CLIFTON WATSON,

        Plaintiff,

v.

CITY OF BURTON, ET AL.,

        Defendants.

Case No. 17-11833

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
R. STEVEN WHALEN

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION [69]; OVERRULING IN PART PLAINTIFF'S OBJECTION [70]; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [36]; AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [54]**

*Pro se* Plaintiff Michael Clifton Watson filed a Complaint[1] in the Genesee County Circuit Court against Defendants the City of Burton, the Burton Police Department, and individual Burton police officers on May 15, 2017, alleging violations of his Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, as well as Michigan common law claims of false arrest and false imprisonment. Defendants removed the case to this Court on June 9, 2017 [1]. The Court referred all pretrial matters to the Magistrate Judge [3] on June 20, 2017.

Plaintiff filed a Motion for Summary Judgment [36] on September 20, 2017. Defendants filed a Motion for Summary Judgment [54] on January 10, 2018.

---

[1] Plaintiff filed an Amended Complaint [24] on August 24, 2017.

On July 16, 2018, the Magistrate Judge issued a Report and Recommendation ("R&R") [69] recommending that the Court grant Defendant's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and dismiss Plaintiff's Amended Complaint with Prejudice.

Plaintiff filed an Objection [70] to the R&R on July 30, 2018. The R&R and Objection have been fully briefed.

The Court declines to fully adopt the R&R because it overlooks the critical fact that the police officers arrested Plaintiff in his home without a warrant. There were no exigent circumstances present to justify this warrantless arrest. The question of whether the police had probable cause for the arrest, therefore, is irrelevant. For that reason, and as explained further below, the Court **ADOPTS** the R&R **IN PART**. Plaintiff's Objection [156] is **OVERRULED IN PART**. Plaintiff's Motion for Summary Judgment [36] is **DENIED**. Defendants' Motion for Summary Judgment [54] is **GRANTED IN PART** and **DENIED IN PART**.

### THE REPORT AND RECOMMENDATION

The R&R summarized the record as follows:

### I. FACTUAL AND PROCEDURAL BACKGROUND

On or about May 15, 2017, Plaintiff Michael Clifton Watson filed a *pro se* civil complaint in Genesee County Circuit Court, naming as Defendants the City of Burton, the Burton Police Department, Detective Freeman, Detective David Powell, Officer Dennis Gross, and Detective Sgt. Shawn Duncanson. The complaint alleges a violation of Plaintiff's Fourth Amendment rights based on his arrest and a violation of the Equal Protection Clause, pursuant

to 42 U.S.C. § 1983, and state law claims of false arrest and false imprisonment. On June 9, 2017, Defendants removed the case to this Court. On August 24, 2017, Plaintiff Michael Clifton Watson filed a revised amended complaint [Doc. #24] in this Court.

Plaintiff alleges that on August 12, 2015, Defendants Detective Eric Freeman, Detective David Powell, Officer Dennis Gross, and Detective Sgt. Shawn Duncanson arrested him at his home when there was no warrant for his arrest. *Amended Complaint* [Doc. #24], ¶¶ 7-8. The complaint lacks detail as to the specific facts on which it is based; however, discovery materials have illustrated the underlying events. Attached to Defendants' motion are the deposition transcripts of the Plaintiff, the text messages between Plaintiff and Ms. Vesta Meissner,[2] and an excerpt of a personal protection hearing with testimony from Defendant Detective Freeman. Plaintiff has also submitted his own affidavit as an exhibit to his response.

This action arises out of an investigation of a victim's complaint in which she felt threatened by the Plaintiff, leading to the Plaintiff's arrest. *Defendants' Motion for Summary Judgment* [Doc. #54], Exhibit 1 – Pl's Dep., p.47. Defendant Detective Freeman testified that he received a threat complaint from Ms. Megan Hubarth, who alleged that the Plaintiff had made some threatening text messages regarding her. *Id.* at Exhibit 3 – Transcript of Personal Protection Hearing, p. 5. The Plaintiff has also submitted a police report written on August 4, 2015, by Officer Marshall Sabourin, approved by Defendant Detective Sgt. Shawn Duncanson, in which Ms. Hubarth alleged that Plaintiff "recently indicated in a text message that he acquired a gun and intends to kill her." *Plaintiff's Response*. [Doc. #58], Exhibit 5 – Police Report. After having received the text messages in question by email, Detective Freeman contacted the City Attorney to see if there was probable cause to arrest Plaintiff. *Defendants' Motion for Summary Judgment* [Doc. #54], Exhibit 3 at p. 5-6.

The Plaintiff testified that on August 12, 2015, he heard knocks on his door from three police officers, who asked him to step outside and asked if he had been sending threatening text messages to Ms. Megan Hubarth. *Id.* at Exhibit 1 – Pl's Dep., p.60-64. Plaintiff admitted that he wrote the text messages but testified he sent the messages to Ms. Vesta Meissner rather than to Ms. Hubarth. *Id.* at 64-65.

---

[2] Ms. Meissner is one of Plaintiff's closest friends. (Defs.' Ex. 2 at 22:9).

Plaintiff told the detectives where his phone was inside his home and wanted to show the detectives that he had not sent the text messages to Ms. Hubarth. *Id*. at 69-70. The text messages at issue, written by Plaintiff and sent to Ms. Meissner, are as follows:

> PLAINTIFF: She needs to know she is not in any danger at all
> MEISSNER: I told he [sic] it was her friends she already knows
> PLAINTIFF: Not just them
> PLAINTIFF: The rest I will not text but it should be obvious to where this is headed
> PLAINTIFF: And I'm sure they mean a lot to her
> PLAINTIFF: Or vice versa
> PLAINTIFF: After I am finished and after you hand me over to the proper authorities, you will take ownership of my possessions, and accounts, I will not be needing them.
> PLAINTIFF: However one phone call can stop all of this
> PLAINTIFF: Who said anything about jail
> MEISSNER: Then what are you talked about put away?
> PLAINTIFF: Vesta everything I've said to you has had a double meaning, the obvious one does not show the intent
> PLAINTIFF: Read over everything
> PLAINTIFF: Pass it along and I have everything I need to get it done
> PLAINTIFF: And I don't care about myself so I have nothing to lose, I'm at peace with my decision, when I start it will be [too] late to stop. I. Will [sic] be at peace when this ends, any more outside people brought into this pain will make resolving the matter more hectic than it has to be.
> PLAINTIFF: I just want peace
> PLAINTIFF: And Damon I'm drunk
> PLAINTIFF: So drunk I need to stop texting
> PLAINTIFF: Goodnight
> MEISSNER: Good night forever or today?
> PLAINTIFF: Today, I'll let you know before the curtain is closed, but it will never be done before the final act. How does it make you feel that with the conditions told to her that she doesn't care, does it make you question your relationship with her?
> PLAINTIFF: I won't stop until I talk with her one on one
> PLAINTIFF: Until then the answer lies within the chorus of drowning pool's song bodies

> PLAINTIFF: Remember I don't do things half ass, go big or go home and I have nothing left to lose so I'm going home
> PLAINTIFF: But hell [I'm] drunk take me seriously or light is up to everyone else

*Id.* at Exhibit 2 – Texts from Plaintiff.

The chorus of Drowning Pool's song "Bodies" reads as follows:

> *Let the bodies hit the floor.*
> *Let the bodies hit the floor.*
> *Let the bodies hit the floor.*
> *Let the bodies hit the floor.*
> *Let the bodies hit the floor.*
> *Let the bodies hit the floor.*[3]

Plaintiff was charged with Threats by Computer, Ordinance Number 134.05A. *Plaintiff's Response* [Doc. #58], Exhibit 3 at 1. Plaintiff testified that he was taken to Burton Police Department by Detective Freeman and another officer, and before he was placed in a holding cell, the other officer in the car with Det. Freeman stated, "That was the easiest arrest that I've made in a while." *Defendants' Motion for Summary Judgment* [Doc. #54], Exhibit 1 at 74-75. The Plaintiff testified that he was then brought over to Flint city lockup and released the next day in the afternoon, on August 13, 2015. *Id.* at 76-79. The Plaintiff also alleges that he was arraigned on or around September 14, 2015, and his pretrial conference was set for a date in October. *Id.* at 87, 91. The Plaintiff testified as follows regarding the pretrial conference:

> Q: And what happened at the pretrial conference?
> A: I spoke with a city attorney, and which I showed him that I was also equally possession with the evidence. And he inquired on where I got it from followed on by a request from me to asking him to drop the charges because it's very clear that I didn't do this. And which he made the statement that "Even without the text message I would still charge you." And I asked why, and he's like—he mentioned the

---

[3] Drowning Pool. "Bodies." *Sinner.* The Bicycle Music Company, 2001, Track 2. Lyrics retrieved from https://www.azlyrics.com/lyrics/drowningpool/bodies.html, last accessed 06/21/18.

police report. And I said, "But with no evidence? What do you mean?" And I—Then he was remotely quiet, and I inquired—And I made the statement to him, "There is only two logical reasons in which someone would persist with no evidence with just the blatant allegations that are unfounded, and that would be if you hold a personal bias towards myself or if you're racist."
Q: What did he say to that?
A: He walked away.

*Id.* 91-92.

Plaintiff alleges violations of his rights under the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment, and state law claims of false arrest and false imprisonment, seeking damages as a result of suffering wrongful arrest, wrongful seizure, wrongful incarceration, hindrance in employment, and emotional and physical injury related to the events.

## LEGAL STANDARD

The Court must make a *de novo* determination of the portions of the R&R to which Plaintiff has objected.  28 U.S.C. § 636(b)(1)(C). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

"The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to complete failure to object." *Cole v. Yukins*, 7 F. Appx. 354, 356 (6th Cir. 2001). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed in error' are too general." *Novak v. Prison Health Services, Inc.*, No.

13-11065, 2014 WL 988942, at *3 (E.D. Mich. Mar. 13, 2014) (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

The Court is mindful of the fact that Plaintiff is a *pro se* litigant and is entitled to some degree of leniency in his court filings. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Court has a duty to give Plaintiff "the benefit of a liberal construction of [his] pleadings and filings." *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). That said, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987)). In addition, "the lenient treatment generally accorded to *pro se* litigants has limits," and they are "not automatically entitled to take every case to trial." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

## ANALYSIS

Plaintiff sets forth the following objections:

- Defendants had no evidence that Plaintiff committed a criminal offense prior to arresting Plaintiff.
- Defendants' police reports are inaccurate and contain misrepresentations.
- Defendants violated Plaintiff's Fourth Amendment rights.
- "Defendants have edited and altered documentation to match their preferred narrative." (Obj. at 4).
- The content of Plaintiff's text messages and statements are irrelevant.
- Defendants did not read Plaintiff his *Miranda* rights before questioning him.
- Defendants lacked probable cause to arrest Plaintiff.
- Defendants subjected Plaintiff to unequal treatment based on Plaintiff's race.

The Court need not consider Plaintiff's argument with respect to the alleged violation of his *Miranda* rights because it does "not specifically address points raised in the Report and Recommendation." *Rich v. United States*, 2005 WL 2277069 (W.D. Mich. Sept. 19, 2005). The Court does not "entertain issues and arguments that appear for the first time in objections to a magistrate judge's report and recommendation." *Moore v. United States*, 2016 WL 4708947, at *2 (E.D. Ky. Sept. 8, 2016) (citing *Moore v. Prevo*, 379 Fed. Appx. 425, 428 n.6 (6th Cir. 2010)).

The remaining objections boil down to two core issues: whether Defendants were justified in arresting Plaintiff without a warrant and whether Defendants discriminated against Plaintiff on the basis of his race.

### I. Plaintiff's false arrest claims

#### A. Fourth Amendment false arrest

It's tempting to say that one of the issues in this case is whether Defendants had probable cause to arrest Plaintiff. That question, however, glosses over a key fact: that the police officers arrested Plaintiff in his home without a warrant.

On August 12, 2015, approximately one week after receiving a complaint from Megan Hubarth, Detective Freeman, Detective Powell, Officer Gross, and Detective Sergeant Duncanson went to Plaintiff's apartment. (Defs.' Ex. 1 at 61:18, 72:12-13). They knocked on Plaintiff's door twice. *Id.* at 62:7-15. Plaintiff

opened the door. Plaintiff stated that the officers asked him to step outside and stated, "[w]e need to see you outside." *Id.* at 62:22, 63:9-10. Without waiting for a response, "one of the officers reached in, grabbed [Plaintiff's] arm and led [him] outside." *Id.* at 63:1-2. The officers then handcuffed Plaintiff and patted him down. *Id.* at 66:22-24.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

Courts have long recognized that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). Plaintiff's deposition testimony – the only evidence in the record that provides details about how the arrest transpired – demonstrates that Plaintiff was seized – indeed, arrested – the moment the officer reached inside the house and grabbed Plaintiff's arm. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) (explaining that "[a]n arrest requires either physical force . . . or . . . submission to the assertion of authority."). Absent a specific exception to the Fourth Amendment warrant requirement, such as consent or exigent circumstances, Defendants had no basis to execute a warrantless arrest of Plaintiff.

Defendants here do not meet the "heavy burden" of demonstrating any need to arrest Plaintiff without a warrant. *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984). This is especially true given the fact that courts are "reluctan[t] to sanction warrantless intrusions into a home for misdemeanor arrests like this." *Brenay v. Schartow*, 709 Fed. Appx. 331, 334 (6th Cir. 2017) (citing *Welsh*, 466 U.S. at 750).

Megan Hubarth contacted the police about her troubles with Plaintiff on August 4. Even with the (arguably troubling) text messages, and Megan's claim that "she had been told that [Plaintiff] had gotten a gun," Defendants waited to arrest Plaintiff until August 12, eight days later. (Defs.' Ex. 1 at 48:5-6). Defendants clearly felt no sense of urgency about confronting and arresting Plaintiff, and, more importantly, they had ample time to secure a warrant. Given that Detective Freeman spoke to the city attorney about Ms. Hubarth's complaint, and got her approval as to a probable cause determination, there's no reason that he could not have then taken the time to obtain an arrest warrant. "Police officers may not, in their zeal to arrest an individual, ignore the fourth amendment's warrant requirement merely because it is inconvenient." *U.S. v. Morgan*, 743 F.2d 1158, 1164 (6th Cir. 1984).

Having determined that there was a constitutional violation, the Court must now consider Defendants' assertion of qualified immunity. Defendants are entitled to qualified immunity unless Plaintiff can show that Defendants' conduct violated

a clearly established statutory or constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established when it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Defendants here had plenty of "fair warning" that their actions – putting their hands on Plaintiff and removing him from his home to arrest him – were unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). *Payton* and *Welsh*, decades-old United States Supreme Court cases, forbid law enforcement officers from executing warrantless, non-consensual entries into a house to make an arrest. *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005). In addition, under Sixth Circuit case law, it is clearly established that police may not arrest a person in his home unless they have a warrant, consent, or exigent circumstances exist. *See U.S. v. Saari*, 272 F.3d 804, 809 (6th Cir. 2001) (citing *Morgan*, 743 F.2d at 1166). Reasonable officers would know of the constitutional protections of a person in his house, and therefore, Defendants are not entitled to qualified immunity. Plaintiff's objection is **SUSTAINED**.

### B. Michigan false arrest

Plaintiff also raises a claim of false arrest against Defendants under Michigan common law. Unlike Plaintiff's constitutional claim, however, the common law claim is subject to the defense of Michigan governmental immunity.

Under Michigan law, a governmental employee may establish immunity to an intentional tort claim by showing the following:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
> (c) the acts were discretionary, as opposed to ministerial.

*Odom v. Wayne County*, 760 N.W.2d 217, 228 (Mich. 2008).

The good faith standard for Michigan governmental immunity, in contrast to the objective standard used when evaluating federal qualified immunity, is a subjective test based on the officers' state of mind. *Brown v. Lewis*, 779 F.3d 401, 420 (6th Cir. 2015). "Michigan governmental immunity 'protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent.'" *Id.* (quoting *Odom*, 760 N.W.2d at 228).

Because Plaintiff has presented no evidence placing the officers' good faith in question, and because the officers' decision to question and arrest Plaintiff was undoubtedly discretionary in nature, the police officer defendants are entitled to governmental immunity. *Ross v. Consumers Power Co.*, 420 Mich. 567, 634 (1984) (explaining that discretionary acts "require personal deliberation, decision, and judgment."). Plaintiff's objection on this claim is **OVERRULED**.

## II. Plaintiff's Equal Protection claim

The Fourteenth Amendment's Equal Protection Clause prohibits governmental discrimination that "burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012) (internal quotations omitted). Because Plaintiff alleges selective enforcement, he "must establish that the challenged police action 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

Plaintiff can establish neither discriminatory effect nor discriminatory purpose. He has not proffered statistical or anecdotal "evidence showing similarly situated individuals of another race were treated differently." *Id.* (citing *King v. City of Eastpointe*, 86 Fed. Appx. 790, 802 (6th Cir. 2003). Additionally, he has not shown discriminatory purpose because he has not presented "evidence that an official chose to prosecute or engage in some other action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *King*, 86 Fed. Appx. at 802 (citing *Wayte*, 470 U.S. at 610). Plaintiff's objections on this claim are therefore **OVERRULED**.

## Conclusion

The Court having reviewed the record,

**IT IS ORDERED** that the Report & Recommendation [69] is **ADOPTED IN PART**. The Court **ADOPTS** the findings and conclusions of the R&R with respect to Plaintiff's common law false arrest, false imprisonment, and equal protection claims against the individual police officers, as well as all claims against the Burton Police Department and the City of Burton. The Burton Police Department and the City of Burton are **DISMISSED** from this action.

**IT IS ORDERED** that Plaintiff's Objection [71] is **SUSTAINED IN PART** and **OVERRULED IN PART.** Plaintiff may proceed with his Fourth Amendment false arrest claim against the individual police officer defendants. All other claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [36] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [54] is **GRANTED IN PART** and **DENIED IN PART**. As explained above, Defendants' motion is granted with respect to all of Plaintiff's claims against the Burton Police Department and the City of Burton, as well Plaintiff's common law false arrest, false imprisonment, and equal protection claims against

the individual police officers. Defendants' motion is denied with respect to Plaintiff's Fourth Amendment false arrest claim.

**SO ORDERED**.

Dated: August 22, 2018

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge